UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA )
)
v. ) No. 2:13-CR-89
)
YUL ROBINETTE )

**REPORT AND RECOMMENDATION**

Defendant is charged with being a convicted felon in possession of a firearm. He has moved that a "surreptitious video recording of [his interrogation]" by officers of the Washington County Sheriff's Office be suppressed, doc. 53. This motion has been referred to the magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636 and the standing order of this court. The hearing was held on August 5, 2014.

On February 28, 2013, defendant called E-911 to report that his home, which he shared with his girlfriend Kimberly Allen, had been invaded by an unknown person or persons, and that his girlfriend was holding someone at gunpoint in their bedroom. Several officers with the Washington County Sheriff's Department quickly responded to defendant's home, including Officer Wayne Phillips and Lieutenant Edwin Graybeal, III.

Officer Phillips, using a video camera[1] affixed to his uniform, recorded his

---

[1] Described as a "pocket cam." On February 28, 2013, it was a novel device and in the initial stages of being distributed to officers of the Washington County Sheriff's Office.

conversation with defendant.[2] During that recorded conversation, defendant related the circumstances of the invasion of his home, and how there had been multiple similar attempts over a five-year period. In the course of his description of the evening's events, he made at least one incriminating statement regarding his possession of a loaded firearm.

It is defendant's argument that the officers knew at the time defendant was a convicted felon, and their investigation shifted from investigating an alleged invasion of his home to defendant himself as a convicted felon in possession of a firearm. Counsel argues that the recording was secretly made to serve as evidence in defendant's ultimate prosecution and that defendant should have been given a *Miranda* warning.

Officer Phillips activated his camera to record his conversation *with a victim*, not a suspect. He did not know defendant was a convicted felon as he conversed with defendant and recorded their conversation, and it was not unusual for Phillips or any other officer to record a victim's account of a crime.

Lieutenant Graybeal was uneasy about the situation he and his fellow officers confronted. First, they were responding to an emergency report of a home invasion. Second, the purported victim indicated that a firearm was involved. Third, both defendant and his girlfriend were acting erratically, and appeared to be under the influence of a drug. Fourth, defendant's story changed from the intruders being *in* the house to being *under* the house. Fifth, the officers could find no indication of a break-in, nor could they find any evidence of intruders beneath the house.

---

[2] He also recorded his subsequent conversation of Ms. Allen.

2

All these circumstances prompted Graybeal to ask both defendant and Ms. Allen if they had ever been arrested, and both said they had not. Graybeal then walked out to his car to contact his dispatcher regarding information about defendant and Ms. Allen. Because of confusion with respect to defendant's first name, Graybeal's inquiry took about 15 minutes. He ultimately learned that both defendant and Ms. Allen had lied to him. Both had been arrested, and defendant had two prior felony convictions. Prior to learning this information from his dispatcher, Graybeal had no inkling that defendant was a convicted felon. He then walked back into the residence and told the other officers that defendant was a convicted felon.

Phillips' conversation with defendant, as far as the video is concerned, was concluded by the time he learned from Lieutenant Graybeal that defendant was a convicted felon. Not until Graybeal learned from his dispatcher that defendant was a felon did the investigative focus shift to defendant himself. Unless there is a constitutional or statutory impediment to a law enforcement officer recording a victim's statement - and there is none - there really is no need to go further in this report and recommendation. Nevertheless, the court will assume that Officer Phillips knew defendant was a convicted felon at the time he made the recording, and will discuss the issue which that assumed fact raises. It is stressed that this assumption is not reality, and is made solely for the purpose of the ensuing discussion.

Even if defendant was suspected of having committed a criminal offense, that does not preclude the officers from questioning him. After all, questioning of suspects is the *raison d'etre* for pretextual traffic stops and *Terry*-stops. Further, even if a defendant is

3

suspected of criminal activity, unless he is in custody or in the functional equivalent of custody, the officers are not obligated to give him a *Miranda* warning. *Miranda* warnings are required only when a defendant is in custody, *Miranda v. Arizona*, 384 U.S. 436 at 444, 467-8, and 477 (1966). "In custody" for *Miranda* purposes is defined to be a curtailment of a suspect's freedom of action "to a 'degree associated with formal arrest,'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *see, also*, *U.S. v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1988). The officers were in defendant's home at his request to investigate a crime he reported. By no stretch of the imagination was he in custody or anything close to custody. His movements were not restricted in any way.[3]

All questions regarding *Miranda* warnings aside, could the officers ultimately testify about the defendant's statements? The answer to that question is, of course, they could. Then the last question to be asked is: what law, whether case law or statutory, bars an officer from *recording* a suspect's statements? Defendant was unable to provide the court with any authority, and this court knows of none. Neither is the court aware of any rule of law that requires the police to advise a defendant that his statements are being surreptitiously recorded. Undercover agents and confidential informants wear recording devices more times than not, and they do so with the obvious intent to gather incriminating evidence. In short, the fact that the police surreptitiously recorded defendant's unwarned, non-custodial statement is irrelevant, even if the police strongly suspected he had committed a criminal act. All the recording does is to provide corroborative evidence of the officers' testimony at the

---

[3] All of which is revealed by the recording, Ex. 2.

4

Case 2:13-cr-00089-JRG-DHI Document 68 Filed 08/06/14 Page 4 of 5 PageID #: 195

trial.[4]

Counsel has represented defendant with vigor and skill, but the arguments she has advanced have no support in federal criminal jurisprudence. To be put it simply, she has done all she could with the facts with which she had to work. In conclusion, the officers were in defendant's home because he invited them there. He was not in custody, and his freedom of action was not restricted to any degree. His "interrogation" was merely the statement he made to the officers in support of the complaint he made to the E-911 dispatcher. The fact that the officers then believed it was defendant who committed a criminal offense did not require either a *Miranda* warning, or a cessation of the recording, since defendant was not in custody. Therefore, it is recommended that defendant's motion to suppress, (Docs. 53) be denied.[5]

Respectfully submitted,

s/ Dennis H. Inman<br>United States Magistrate Judge

---

[4] Numerous times this court has presided over suppression hearings during which the defendant took the police to task for failing to record a defendant's statement when they had the capability to do so, usually in the context of a traffic stop. Here, the officers are criticized for making a recording.

[5] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).